**Lynn HOFFMAN, Plaintiff,**

v.

**PROFESSIONAL MED
TEAM, Defendant.**

No. 1:01–CV–3.

United States District Court,
W.D. Michigan,
Southern Division.

June 5, 2003.

Henry L. Guikema, Henry L. Guikema, PC, Grand Rapids, MI, for Plaintiff.

Allison C. Reuter, Nemeth Burwell, P.C., Detroit, MI, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

QUIST, District Judge.

Plaintiff, Lynn Hoffman ("Plaintiff"), charges that she was terminated from her employment with Defendant, Professional Med Team ("PMT"), in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654. Plaintiff seeks damages and reinstatement. The case was tried to the Court. These are the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.[1]

### Issue Presented

Plaintiff brought the instant action under the FMLA on January 2, 2001, which was over two years and two months after Plaintiff was fired from her employment at PMT. The statute of limitations under the FMLA is two-fold:

> (1) In general. Except as provided in paragraph (2), an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought.

> (2) Willful violation. In the case of such action brought for a willful violation of section 105 [29 U.S.C. § 2615], such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought.

29 U.S.C. § 2617(c)(1), (2). Since Plaintiff exceeded the two-year statute of limitations under § 2617(c)(1), Plaintiff is required to prove facts that would support Plaintiff's allegation that PMT's violation of the FMLA was willful.

█ In order to support a finding of willful violation of the FMLA, *Plaintiff must prove that PMT "kn[ew] its conduct to be wrong or has shown a reckless disregard for the matter in light of the statute."* *Sampson v. Citibank, F.S.B.*, 53 F.Supp.2d 13, 19 (D.D.C.1999) (emphasis added) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988) (determining standard of "willfulness" under identical language of the Fair Labor Standards Act ("FLSA"))); *see also Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir.1991) (applying willfulness standard to FLSA). Both parties agree that PMT had a right to request that Plaintiff submit a completed Form WH–380 physician certification. Therefore, the threshold question before the Court is whether PMT's refusal to accept Plaintiff's physician certification with a "No" answer to question 5.b., indi-

---

1. This case was originally assigned to Hon. Douglas W. Hillman. It was reassigned to the undersigned when Judge Hillman took inactive status. Some of the facts which are uncontested are taken from Judge Hillman's Opinion Re Defendant's Motion for Summary Judgment.

cating that Plaintiff's qualifying medical condition did not require her to take intermittent or reduced schedule leave, constituted a willful violation of the FMLA. The Court concludes that it did not.

### Overview of FMLA Certification

The Family and Medical Leave Act of 1993 ... allows "eligible" employees of a covered employer to take job-protected, unpaid leave, or to substitute appropriate paid leave if the employee has earned or accrued it, for up to a total of 12 workweeks in any 12 months because ... the employee's own serious health condition makes the employee unable to perform the function of his or her job (*see* § 825.306(b)(4)). *In certain cases, this leave may be taken on an intermittent basis rather than all at once, or the employee may work a part-time schedule.*

29 C.F.R. § 825.100(a) (emphasis added). To qualify for FMLA leave, an employee must show two things: (1) that the employee suffers from a "serious health condition" as defined under 29 C.F.R. § 825.114; and (2) that "the employee is unable to perform the functions of the position of the employee" as defined under 29 C.F.R. § 825.115. 29 U.S.C. § 2612; 29 C.F.R. § 825.112(a)(1). An employee satisfies § 825.115 if the employee is unable to perform some or all of the functions of the employee's position within the meaning of the FMLA, or if the employee "must be absent from work to receive medical treatment for a serious condition." 29 C.F.R. § 825.115.

Upon a showing of a "serious health condition" that renders an "employee unable to perform the functions of the posi-tion of the employee," an employee may seek three kinds of leave: (1) all at once; (2) intermittent leave; or (3) leave on a reduced leave schedule. 29 C.F.R. § 825.117 ("For intermittent leave or leave on a reduced leave schedule, there must be a medical need for leave (as distinguished from voluntary treatments and procedures) and it must be that such medical need can be best accommodated through an intermittent or reduced leave schedule."); *see also* 29 C.F.R. § 825.203. "Intermittent leave" is:

> leave taken in separate periods of time due to a single illness or injury, rather than for one continuous period of time, and may include leave of periods from an hour or more to several weeks. Examples of intermittent leave would include leave taken on an occasional basis for medical appointments, or leave taken several days at a time spread over a period of six months, such as for chemotherapy.

29 C.F.R. § 825.800 (defining "intermittent leave"). In contrast, "reduced leave schedule" is defined as "a leave schedule that reduces the usual number of hours per workweek, or hours per workday, of an employee." 29 C.F.R. § 825.800 (defining "reduced leave schedule").

Pursuant to 29 C.F.R. § 825.305, an employer may require [2] an employee seeking FMLA leave to submit a written physician certification:

> At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification. The employer shall advise an employee whenever the employer finds a certifi-

---

**2.** There is a difference between "foreseeable" and "unforeseeable" leave. In the instant case, *the parties agree* that PMT had a right to demand that Plaintiff have her physician complete Form WH–380. The issue before the Court is thus limited to whether the answers that Plaintiff's physician provided on Form WH–380 were sufficient to certify Plaintiff's FMLA request.

cation incomplete, and provide the employee a reasonable opportunity to cure any such deficiency.

29 C.F.R. § 825.305(d). The United States Department of Labor has developed an optional form, Form WH–380,[3] for employees' "use in obtaining medical certification ... from health care providers that meets FMLA's certification requirements." 29 C.F.R. § 825.306(a). An exegesis of the questions posed by Form WH–380, in the order corresponding to the questions posed by Form WH–380, appears at 29 C.F.R. § 825.306(b)(1)-(5).[4] In a combined explanation of Form WH–380 questions three and four, § 825.306(b)(1) states that these questions seek to ascertain:

> A certification as to which part of the definition of "serious health condition" (see § 825.114), if any, applies to the patient's condition, and the medical facts which support the certification, including a brief statement as to how the medical facts meet the criteria of the definition.

29 C.F.R. § 825.306(b)(1). Form WH–380 questions three and four thus inquire whether the patient has a "serious medical condition," satisfying the first requirement for FMLA leave. Next, § 825.306(b)(2) is divided into three sub-parts to correspond to Form WH–380 questions 5.a. through 5.c. Form WH–380 question 5.a. seeks to ascertain:

> The approximate date the serious health condition commenced, and its probable duration, including the probable duration of the patient's present incapacity (defined to mean inability to work, attend school or perform other regular activities due to the serious health condition, treatment therefor, or recovery therefrom) if different.

29 C.F.R. § 825.306(b)(2)(i). Form WH–380 question 5.a. thus inquires when the serious medical condition began and how long it will last. Form WH–380 question 5.b. seeks to ascertain

> [w]hether it will be necessary for the employee to take leave intermittently or to work on a reduced leave schedule basis (*i.e.*, part-time) as a result of the serious health condition (see § 825.117 and § 825.203), and if so, the probable duration of such schedule.

29 C.F.R. § 825.306(b)(2)(ii). Form WH–380 question 5.b. thus inquires whether the employee is seeking either intermittent leave or reduced schedule leave in the future as a result of the "serious health condition."[5] Accordingly, if an employee

---

3. Form WH–380, as revised, is found at Appendix B to 29 C.F.R. § 825.

4. The first two questions on Form WH–380 respectively ask the employee's name and the patient's name, if different from the employee. Since the meaning of these questions is self-explanatory, 29 C.F.R. § 825.306(b) does not specifically address these questions. Rather, 29 C.F.R. § 825.306(b) begins its exegesis of Form WH–380 with question three, starting at 29 C.F.R. § 825.306(b)(1).

5. Form WH–380 includes two other multi-part questions applicable to employees seeking FMLA leave based on the employee's medical condition. First, Form WH–380 question six seeks to ascertain four things: (1) whether additional treatments are required for the serious condition; (2) if the employee requires intermediate leave or reduced schedule leave (*i.e.*, if the employee answered "yes" to any part of Form WH–380 question 5.b.) an estimate of the intervals and dates between such treatments, if known; (3) the nature of treatments, if any, administered by other health care providers; and (4) the nature of the treatment regimen, if any, administered by the certifying health care provider. 29 C.F.R. § 825.306(3)(i)(A)-(iii). Second, Form WH–380 question seven seeks to ascertain whether the employee is able to perform some or any work, and whether the employee must be absent from work for treatment. 29 C.F.R. § 825.306(4)(i)-(iii). These questions thus do not address *whether* the employee is seeking either intermittent leave or reduced schedule leave, but rather the reasons *why* the leave

requesting intermittent or reduced schedule leave answers "no" to Form WH–380 question 5.b., the employer may deem the employee to have submitted an FMLA leave request that seeks no medically-justified leave. The employer can thus deny the employee's request for FMLA leave without questioning the adequacy of the medical certification,[6] because the "no" answer to Form WH–380 question 5.b. renders the employee's FMLA request incomplete.

### Findings of Fact

PMT is a company located in Muskegon, Michigan, that provides emergency ambulance services to the surrounding areas. When PMT receives a call from "911," it dispatches its closest available ambulance to administer care or transport the individual to the nearest hospital. Two employees, a lead paramedic and either another paramedic or an emergency medical technician ("EMT") specialist, are assigned to each ambulance. If one of the two employees assigned to the ambulance is unavailable to work, either a supervisor rides with the ambulance that day or the ambulance will not go out.

In 1988, Plaintiff was hired full time by PMT as an EMT specialist. Plaintiff was licensed by the State of Michigan as an Emergency Medical Treatment Specialist Paramedic I. Between 1988 and October 8, 1998, Plaintiff continued to work a scheduled forty-eight-hour week for PMT. Plaintiff's job duties were to drive an ambulance and to treat and transfer sick and injured people as part of an ambulance team.

Plaintiff was a member of the Service Employees International Union, Local 79 ("Local 79"). The terms and conditions of Plaintiff's employment were governed by a collective bargaining agreement between Local 79 and PMT and work rules promulgated by PMT. Under the terms of the collective bargaining agreement, Plaintiff was considered a full-time employee.

Beginning in 1993 or 1994, Plaintiff was diagnosed with recurrent migraine headaches, which caused Plaintiff to experience visual disturbances, nausea, photophobia, dizziness, and tension. Plaintiff treated with David Deitrick, M.D. ("Dr.Deitrick"), in Muskegon, Michigan. Plaintiff's headaches sometimes last for three or four days, and there is no predictability as to when Plaintiff's headaches will occur. Plaintiff has taken several medications for her condition, including Vicodin, and Plaintiff has recurrent hospital stays if her medications do not relieve her headaches. When Plaintiff's headaches are so severe that she must seek treatment at a hospital, Plaintiff receives medication that causes drowsiness and up to twelve hours of continuous sleep. When Plaintiff is suffering from a severe migraine headache, Plaintiff is unable to perform her job. However, because of the unforewarned onset of these headaches, a formal change in Plain-

---

requested by a "yes" answer to Form WH–380 question 5.b. is required.

**6.** If an employee submits a *complete* FMLA request, an employer is barred from requesting additional information from the employee's health care provider. 29 C.F.R. § 825.307(a). However, with the employee's permission, a health care provider representing the employer may contact the employee's health care provider to seek additional information. *Id.* Additionally, if the employer has reason to doubt the validity of the employee's physician certification, the employer may require the employee to obtain a second opinion at the employer's expense. 29 C.F.R. § 825.307(a)(2). If the opinion of the employee's health care provider differs from that of the employer's designated health care provider, the employer may require the employee to obtain certification from a third health care provider at the employer's expense. 29 C.F.R. § 825.307(c). The opinion of the third health care provider will be final and binding. *Id.*

tiff's work schedule would have no benefit to Plaintiff or PMT, *i.e.*, Plaintiff's migraine headaches cannot be scheduled to be more convenient to Plaintiff or PMT.[7] The timing of the disability is "unforeseeable." Prior to 1997, Plaintiff experienced a need for intermittent leave as the result of this condition, and PMT granted FMLA leave to Plaintiff pursuant to a physician certification from Dr. Deitrick.

On November 6, 1997, PMT's controller, Marlene Tejchma ("Tejchma"), sent a letter to Plaintiff advising that Plaintiff's physician certification was one-year old.[8] Tejchma's letter requested that Plaintiff submit an updated physician certification, not later than November 29, 1997, in order for Plaintiff to continue to receive FMLA leave. Tejchma's letter also stated that Plaintiff's prior certification was inconsistent regarding Plaintiff's need for intermittent leave. Plaintiff notified PMT that her recertification would be delayed until December 4, 1997, the earliest date that Plaintiff could see Dr. Deitrick. In the meantime, Tejchma sent another letter to Plaintiff acknowledging the Plaintiff's delay and warning that Plaintiff may not have FMLA coverage between November 29, 1997, and December 4, 1997.

As requested by PMT, Plaintiff took the physician certification form to Dr. Deitrick's office. Plaintiff was a former employee of Dr. Deitrick and was well acquainted with Dr. Deitrick's office personnel. Dr. Deitrick did not personally complete Plaintiff's physician certification form. Rather, Plaintiff filled out the form and took it to Dr. Deitrick for his signature. Dr. Deitrick states that he read the answers that Plaintiff had written on the physician certification and agreed with what Plaintiff had written. Dr. Deitrick signed Plaintiff's physician certification on December 4, 1997, and takes full responsibility for the physician certification's content.

Plaintiff's physician certification contained the following answers (answers in italics):

3. The attached sheet describes what is meant by a "serious health condition" under the Family and Medical Leave Act. Does the patient's condition qualify under any of the categories described? If so, please check the applicable category.

   (1)—(2)—(3)—(4) *4* (5)—(6)—, or None of the above—

4. Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:

   *Pt has recurrent migraine headaches—lasting 1–5 days.*

5.a. State the approximate date the condition commenced and the probable duration of the condition (and also the probable duration of the patient's present incapacity if different):

   *Pt has had recurrent migraines for some years—these will cause intermittent short-term disabilities.*

b. Will it be necessary for the employee to take work only intermittently or on a less than full schedule as a result of the condition (including for treatment described in item 6 below)?

   *No.*

---

7. Despite Plaintiff's medical problems, Plaintiff was able to work her job as an EMT.

8. The physician certification form is a document entitled "Certification of Health Care Provider," which is prepared by the United States Department of Labor, Employment Standards Administrator, Wage and Hour Division.

If yes, please give the probable duration:

*[no answer given]*

c. *If the condition is a chronic condition* (condition # 4) or pregnancy, state whether the patient is presently incapacitated and the likely duration and frequency of episodes of incapacity:

*[no answer given, even though Plaintiff certified her condition was "chronic" above]*

6.a. If additional treatments will be required for the condition, provide an estimate of the probable number of such treatments.

*[no answer given]*

If the patient will be absent from work or other daily activities because of treatment on an intermittent or part-time basis, also provide an estimate of the probable number and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any:

*2 days*

. . . . .

7.a. If medical leave is required for the employee's absence from work because of the employee's own condition (including absences due to pregnancy or a chronic condition), is the employee unable to perform work of any kind? *Yes*

b. If able to perform some work, is the employee unable to perform any one or more of the essential functions of the employee's job (the employee or the employer should supply you with information about the essential job functions)? *[no answer given]* If yes,

please list the essential functions the employee is unable to perform: *[no answer given]*

c. If *neither* a. nor b. applies, is it necessary for the employee to be absent from work for treatment? *Yes*

(Certification of Health Care Provider, Pl.'s Trial Ex. 5 (underscoring added) (Dr. Deitrick's responses in italics) (footnotes omitted).)

PMT received Plaintiff's physician certification on February 2, 1998. Following internal deliberation and consultation with an attorney, PMT declined to accept Plaintiff's physician certification. In a responsive letter to Plaintiff dated February 6, 1998, PMT Operations Manager, Tom Schmiedeknecht ("Schmiedeknecht"), advised Plaintiff that it appeared that Plaintiff's "Medical Leave of Absence would be covered under FMLA, but to confirm this" PMT needed clarification on Plaintiff's apparently contradictory answer to question 5.b. and Plaintiff's non-response to question 6.a. (Letter from Schmiedeknecht to Hoffman of 2/6/98, Pl.'s Trial Ex. 6.) Specifically, Schmiedeknecht's letter stated in relevant part:

> Your health care certification states your condition will require intermittent short term disability (5a), yet in item 5b you answer "no" to the question must work less than a full schedule. (These points seem contradictory.)
>
> Item 6a there is no response.

(*Id.*) PMT asked for Plaintiff's supplementation by February 13, 1998. (*Id.*)

Plaintiff met with Dr. Deitrick and reviewed with him PMT's criticism of Plaintiff's physician certification. Dr. Deitrick advised Plaintiff that the certification was accurate as prepared and declined to make a revision.[9] Plaintiff told Schmiedeknecht

---

**9.** Plaintiff did not want to change the answer to sub-question 5.b. to "Yes," because Plaintiff believed that if she did so, she could be rescheduled as a part-time employee, thus removing her from her bargaining unit and costing her the protections of the collective bargaining agreement. Schmiedeknecht stated at trial that a "Yes" answer to question

that Dr. Deitrick would not change Plaintiff's physician certification.

PMT continued to refuse to accept Plaintiff's unchanged physician certification. On March 6, 1998, Tejchma sent another letter to Plaintiff advising Plaintiff that Tejchma had received Plaintiff's FMLA leave request for February 18, 1998, through March 9, 1998, together with a statement for short-term disability claim and a note on a prescription pad from Dr. Deitrick placing plaintiff off work from February 18, 1998, through March 10, 1998. (Letter from Tejchma to Hoffman of 3/6/98, Pl.'s Trial Ex. 7.) In that letter, Tejchma enclosed another physician certification form and advised Plaintiff that

> we have never received the Certification of Health Care Provider form for your previous FMLA request for migraine headaches, which was due 2/25/98. If this is still an outstanding request for FMLA, please return the form no later than March 23, 1998. Otherwise, we will consider that this request has been withdrawn.

(*Id.*) Subsequently, on March 26, 1998, Tejchma sent another letter to Plaintiff, stating that because PMT had not received Plaintiff's physician certification form by the most recent due date of March 23, 1998, PMT would consider Plaintiff's request for FMLA leave withdrawn and cancelled. (Letter from Tejchma to Hoffman of 3/26/98, Pl.'s Trial Ex. 8.)

After February 2, 1998, Plaintiff continued to take time off, and PMT paid Plaintiff for her time off. Plaintiff missed work on several occasions and was paid for her time off following PMT's letters of March 1998. Although Plaintiff contends that she believed the time was being treated as FMLA leave and that Plaintiff was being paid from Plaintiff's accumulated sick and vacation leave as permitted by the FMLA, PMT contends that she was being paid simply under the company's sick leave policy without regard to the FMLA.

In late September or early October 1998, Plaintiff had a severe migraine attack and missed work for seventy-two hours. On October 5, 1998, Schmiedeknecht sent a letter to Plaintiff stating:

> In review of your recent attendance history, I am concerned with the increasing frequency of absences and your leaving work early with very little or no advance notice. I also understand that many or all of these absences can be attributed to your migraines, which prevent you from providing patient care and safely operating a motor vehicle. I am concerned that your condition affects your ability to perform essential duties required in your position as an EMT Specialist.

(Letter from Schmiedeknecht to Hoffman of 10/5/98, Pl.'s Trial Ex. 9.) Schmiedeknecht referred Plaintiff to the Westshore

---

5.b. would provide PMT with grounds to potentially designate Plaintiff as a part-time employee. Although, Schmiedeknecht also stated that PMT did not intend to deprive Plaintiff of her union rights.

Plaintiff's theory, however, ignores the protections available to her under the FMLA. Under 29 C.F.R. § 825.205, an employer may transfer an employee that is taking intermittent or reduced schedule leave to an alternate position, but "[t]he alternate position must have equivalent pay and benefits." 29 C.F.R. § 825.205(c). Additionally, "[a]n employer may not transfer the employee to an alternate

position in order to discourage the employee from taking leave or otherwise work a hardship on the employee," and "[a]ny such attempt on the part of the employer to make such a transfer will be held to be contrary to the prohibited acts of the FMLA." 29 C.F.R. § 825.205(d). Thus, if Plaintiff submitted a complete request for intermittent leave under the FMLA, and as a result PMT reduced Plaintiff to a part-time employee and used Plaintiff's reduced schedule as a means to deprive her of future FMLA leave or terminate her, Plaintiff would have had grounds to sue PMT for violating the FMLA.

Occupational Health Center for an evaluation. (*Id.*) Plaintiff complied with Schmiedeknecht's request and was evaluated on October 7, 1998. Plaintiff was pronounced fit for work without restrictions and given a "Return to Work Slip," which she took to Schmiedeknecht's office that same day.

On October 7, 1998, Plaintiff confronted Schmiedeknecht in his office. Plaintiff presented Schmiedeknecht with the "Return to Work Slip," and Plaintiff was agitated. Plaintiff waived the "Return to Work Slip" in Schmiedeknecht's face and told Schmiedeknecht to "quit fucking with [her]."

The next day, October 8, 1998, Plaintiff was not scheduled to work. Plaintiff, however, went to PMT's office to pick up her paycheck. Upon review of her paycheck, Plaintiff discovered that she had not been paid from her accumulated vacation time for the seventy-two hours Plaintiff had been off because of a migraine. Plaintiff went to Schmiedeknecht's office to protest. Plaintiff was very upset during the confrontation. Plaintiff demanded that Schmiedeknecht "quit fucking with [her]," and Schmiedeknecht told Plaintiff to leave the building. Plaintiff stormed out of Schmiedeknecht's office. Schmiedeknecht followed Plaintiff outside and yelled to Plaintiff across the parking lot that Plaintiff was suspended. Plaintiff again yelled at Schmiedeknecht to "quit fucking with [her]" and to "leave [her] alone." Plaintiff then proceeded to walk away.

Schmiedeknecht suspended Plaintiff's employment with PMT. On October 16, 1998, Plaintiff filed a grievance through her union regarding the seventy-two hours that PMT withheld from her paycheck. During Plaintiff's suspension, PMT offered to pay Plaintiff the seventy-two hours if Plaintiff would provide an "acceptable" physician certification, meaning that Plaintiff would answer "yes" to question 5.b. (Letter from Schmiedeknecht to Hoffman

of 10/15/98, Pl.'s Trial Ex. 10.) Plaintiff did not submit a new physician certification.

In a letter dated October 21, 1998, PMT terminated Plaintiff's employment, effective October 8, 1998, for the following four stated reasons: (1) unprofessional conduct while working (Group II violation) and/or; (2) discourteous or unkind conduct directed to other employees (Group I violation) and/or; (3) use of obscene language in the presence of other employees (Group I) and/or; (4) violation of PMT's policies as posted or distributed (Group I) including but not limited to Policy # 306, Employee Conduct and Policy # 325, Antiviolence. (Letter from Schmiedeknecht to Hoffman of 10/21/98, Pl.'s Trial Ex. 11.)

Plaintiff filed a grievance regarding her discharge on November 3, 1998, which Plaintiff pursued through arbitration. The arbitrator, however, determined that Plaintiff's union failed to comply with the time requirements for lodging a grievance as set forth in the collective bargaining agreement. Plaintiff's grievance was thus dismissed as untimely. On January 2, 2001, Plaintiff filed the instant civil action.

Further findings of fact are set forth in the "Conclusions of Law."

### Conclusions of Law

I. *Plaintiff Must Prove a Willful Violation*

Plaintiff brought the instant action under the FMLA on January 2, 2001, which was over two years and two months after Plaintiff was fired from her employment at PMT. Thus, since Plaintiff exceeded the two-year statute of limitations under § 2617(c)(1), Plaintiff is required to prove facts that would support Plaintiff's allegation that PMT's violation of the FMLA was willful pursuant to 29 U.S.C. § 2617(c)(2). To prove a willful violation, Plaintiff must show that either: (1) PMT

knew that its refusal to accept Plaintiff's physician certification form as tendered violated the FMLA; or (2) PMT's actions showed a reckless disregard for the matter in light of the FMLA statute. *Sampson,* 53 F.Supp.2d at 19.

## II. *PMT's Refusal to Accept Plaintiff's Physician Certification*

■ Plaintiff asserts that PMT violated Plaintiff's rights under the FMLA by refusing to accept the physician certification that Plaintiff submitted to PMT on February 2, 1998. In order for Plaintiff to prevail under the "willful violation" standard, Plaintiff must demonstrate that PMT either (1) knew its conduct to be wrong, or (2) showed a reckless disregard for the matter in light of the FMLA when PMT rejected Plaintiff's physician certification and thereby denied Plaintiff FMLA leave. Based on the above recitation of the FMLA's physician certification regulations and the relevant case law, the Court finds that Plaintiff failed to make this showing.

On November 6, 1997, PMT requested that Plaintiff submit a new physician certification (Form WH–380), since her prior physician certification was over one year old. Plaintiff does not challenge PMT's right to request the physician certification. PMT was within its rights under the FMLA to request an updated physician certification, and PMT was under no obligation to continue Plaintiff's FMLA leave if Plaintiff did not submit a complete and qualifying physician certification.

On February 2, 1998, Plaintiff submitted to PMT her physician certification, signed by her physician, with a "no" answer to question 5.b. PMT deemed Plaintiff's answer to question 5.b. as contradictory to Plaintiff's claim that her "serious medical condition," which "caused short term dis-

abilities," necessitated that Plaintiff actually miss work. PMT returned Plaintiff's physician certification, stating that Plaintiff's request for FMLA leave was contradictory because Dr. Deitrick had not certified that Plaintiff required any leave. In other words, as interpreted by PMT, Plaintiff's physician certification stated that Plaintiff suffered from a qualifying "serious medical condition" (question 3), one which caused Plaintiff "short term disabilities" (question 5.a.), but Plaintiff's condition did not require either intermittent leave or reduced schedule leave (question 5.b.). Since Plaintiff testified that she was in fact submitting her physician certification in order to qualify for intermittent FMLA leave, the Court finds that PMT could have reasonably interpreted Plaintiff's answer to question 5.b. as contradictory and not a valid request for FMLA leave.[10] PMT then gave Plaintiff multiple opportunities to correct her answer to question 5.b., so that Plaintiff would qualify for FMLA leave. For example, PMT sent letters to Plaintiff regarding the consequences of Plaintiff's response to question 5.b. on February 6, March 6, March 26, and October 5, 1998.

The small amount of case law addressing the issue of what actions an employer must take under the FMLA upon receiving from an employee an incomplete or nonqualifying physician certification is in accord with the Court's reading of 29 C.F.R. § 825 in its Overview of the FMLA section above. For example, in *Stoops v. One Call Communications, Inc.,* 141 F.3d 309 (7th Cir.1998), the employee-plaintiff sought leave under the FMLA, and the employer-defendant requested that the employee submit a qualifying physician certification. *Id.* at 310–11. The employer provided the

---

**10.** Both Plaintiff and Dr. Deitrick testified that they found the language of Form WH– 380, especially question 5.b., to be confusing.

employee with Form WH–380 for his health care provider to complete. *Id.* at 311. When the employee returned the physician certification, the employer noted that the employee's doctor had certified that the employee "would not have to work intermittently or on a reduced work schedule." *Id.* The employer informed the employee that the physician certification did not qualify the employee for FMLA leave, and thereafter fired the employee for subsequent unexcused absences. *Id.*

The *Stoops* court rejected the employee's claim that because the employee's physician certified that the employee had a "chronic" condition, the employer should have been on notice that the employee's condition would cause him "episodic" incapacity. *Id.* at 313. The court found that this argument "does not explain away" the physician's certification that the employee's chronic condition should not require the employee to miss work. *Id.* "The rule that [the employee] advocates is bottomed on the apparent assumption that [the employee's] own physician was 'wrong' and a subsequent certification would have contradicted the initial certification by concluding that [the employee] in fact did have to miss work." *Id.* Accordingly, the court held that the employee's claim failed, because *"[w]here an employer ... requests from the employee and receives a physician's certification that indicates that an employee's serious health condition does not require him to miss work, the employer may rely on that certification until the employee provides a contradictory medical opinion." Id.* (emphasis added). Thus, while an employer on notice of an employee's potential qualification for FMLA leave is normally under a duty to investigate further an employee's status if the employer needs "additional information," 29 C.F.R. § 825.303(b), the employer's duty to investigate disappears once the employee provides the employer with a non-qualifying physician certification.

Plaintiff presented no evidence that PMT knew its conduct to be wrong when it rejected Plaintiff's physician certification. No PMT employee testified that PMT was operating under false pretenses when PMT informed Plaintiff that PMT found Plaintiff's physician certification responses to be contradictory. Thus, Plaintiff failed to show that PMT met the first prong of the "willful violation" test.

Plaintiff also failed to prove that PMT showed a reckless disregard for the matter in light of the FMLA. While the Court need not reach the question of whether PMT's interpretation of what constitutes a complete and adequate physician certification was correct, the Court finds that PMT's interpretation was not wholly inconsistent with the plain language of the FMLA, the regulations construing the FMLA, and the Seventh Circuit's opinion in *Stoops*, as discussed above. Thus, Plaintiff failed to show that PMT met the second prong of the "willful violation" test.

Additionally, since PMT did not willfully violate Plaintiff's rights by rejecting her physician certification, PMT had no obligation under § 825.307(a) to request additional information from Dr. Deitrick or pay for a second medical opinion.

### III. *Plaintiff's Fitness–for–Duty Exam*

■ Plaintiff asserts that in directing Plaintiff to undergo the fitness-for-duty exam, PMT violated Plaintiff's rights under the FMLA pursuant to 29 C.F.R. § 825.310(g). It is uncontested that on October 5, 1998, PMT directed Plaintiff to submit to a fitness-for-duty exam, and Plaintiff was examined on October 7, 1998. Section 825.310(g) states: "An employer is not entitled to certification of fitness to return to duty when the employee takes intermittent leave as described in § 825.203." 29 C.F.R. § 825.310(g). The Court finds that PMT did not violate Plain-

tiff's FMLA rights because Plaintiff previously certified that she was ineligible to take intermittent FMLA leave.

On February 2, 1998, Plaintiff returned her physician certification to PMT, which PMT could reasonably interpret as certifying that Plaintiff was not eligible for FMLA leave. As discussed above, the Court found that PMT did not willfully deprive Plaintiff of her rights under the FMLA when it refused to accept Plaintiff's physician certification. While there is some question whether PMT continued to provide Plaintiff with intermittent FMLA leave benefits after February 2, 1998, Plaintiff's October 8, 1998, paycheck evidences that PMT was not providing Plaintiff with intermittent FMLA leave by late September or early October 1998. Thus, since Plaintiff was deemed ineligible for FMLA leave over eight months prior to the time PMT directed Plaintiff to submit to the fitness-for-duty exam, and PMT was not providing Plaintiff with intermittent FMLA leave benefits at the time PMT directed Plaintiff to submit to the exam, the protections of § 825.310(g) are inapplicable. Accordingly, the Court finds that PMT did not violate Plaintiff's rights under the FMLA by directing her to submit to a fitness-for-duty exam on October 5, 1998.

## IV. *Plaintiff Retaliation Claim*

█ Finally, Plaintiff asserts that PMT's stated reasons for dismissing Plaintiff were merely a pretext to avoid paying for Plaintiff's intermittent FMLA leave in violation of 29 U.S.C. § 2615(a)(2). Section 2615(a)(2) states: "Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title." 29 U.S.C. § 2615(a)(2). Under 29 C.F.R. § 825.220(e),

> Individuals, and not merely employees, are protected from retaliation for opposing (e.g., file a complaint about) any practice which is unlawful under the Act. *They are similarly protected if they oppose any practice which they reasonably believe to be a violation of the Act or Regulation.*

29 C.F.R. § 825.220(e) (emphasis added). Thus, contrary to PMT's assertions, Plaintiff may bring a claim for retaliation even if the Court finds that PMT did not willfully violate the FMLA by refusing to accept Plaintiff's physician certification. *See Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 314 (6th Cir.2001) (finding that plaintiff had a right to request leave under the FMLA without being terminated in retaliation). However, like Plaintiff's claims addressed above, Plaintiff's retaliation claim is governed by the willfulness standard. Accordingly, Plaintiff must prove that even though PMT contends that it terminated Plaintiff for using vulgar language in her confrontations with Schmiedeknecht in violation of PMT policy, PMT actually discharged Plaintiff because Plaintiff repeatedly asserted her right to request FMLA leave and PMT either knew or recklessly disregarded the fact that such a discharge violated the FMLA. Since Plaintiff did not offer any evidence that PMT knew that its decision to terminate Plaintiff violated the FMLA, Plaintiff must prove that PMT recklessly disregarded the FMLA.

Plaintiff asserts that PMT sought to downgrade her employment status from full-time to part-time through the use of the physician certification, which Plaintiff believed would prevent her from working the required number of hours to remain eligible for certain rights under the collective bargaining agreement. Plaintiff further contends that once it became apparent to PMT that Plaintiff would not provide a physician certification with a "yes" answer to question 5.b., allowing PMT to reschedule and ultimately termi-

nate Plaintiff, PMT sought another reason to terminate Plaintiff.[11] Thus, while Plaintiff admitted that she used vulgar language in her confrontations with Schmiedeknecht, she asserts that her behavior did not constitute a terminable offense. Accordingly, Plaintiff argues, if Plaintiff's behavior was insufficient to merit termination, then PMT's stated reason for dismissing her was a pretext and in violation of the FMLA.

The Court finds that Plaintiff reasonably, although ultimately incorrectly, believed that she was asserting her FMLA rights by refusing to answer question 5.b. of the physician certification based on her belief that question 5.b. was not applicable to her condition and work status. Plaintiff thus reasonably believed that she had submitted a qualifying physician certification for FMLA leave and that PMT was not entitled to order her to undergo a fitness-for-duty exam or refuse to pay her during her leave prior to her confrontations with Schmiedeknecht. After having had the opportunity to hear and see the witnesses and consider all of the evidence in this case, the Court finds that PMT's stated reasons for terminating Plaintiff are possibly pretextual.

First, prior to the confrontations, PMT ordered Plaintiff to undergo a fitness-for-duty exam. Thus, it is apparent that PMT was at least contemplating Plaintiff's medical condition as a possible reason for restricting Plaintiff's duties or terminating her. However, Plaintiff was released to work without restrictions, so PMT was unable to alter Plaintiff's employment status based on the results of the test.

Second, the impetus for both Plaintiff's October 7, 1998, and October 8, 1998, confrontations with Schmiedeknecht was Plaintiff's belief that PMT was depriving her of her rights under the FMLA by making her undergo the fitness-for-duty exam and repeatedly asking her to submit the completed physician certification. In other words, PMT was "messing with her" in violation of the FMLA. While the Court does not condone Plaintiff's behavior, or the vulgar language she used to express her frustrations, the language that Plaintiff used amounted to little more than an ineloquent phrasing of "quit messing with me." The word "fuck" was commonly used by various PMT employees, although none testified that it was used in work-related, supervisor-employee conversations. The Court concludes that Plaintiff reasonably believed that she was entitled to FMLA leave and that her confrontations with Schmiedeknecht constitute Plaintiff's complaints, albeit in an inappropriate manner, about her perceived treatment in violation of the FMLA.

On the other hand, PMT asserts that it terminated Plaintiff for screaming the word "fuck" at her supervisor, Schmiedeknecht, within earshot of other employees during two consecutive workplace confrontations. After the first confrontation, Schmiedeknecht stated that he attempted to contact Plaintiff's union steward to discuss Plaintiff's behavior. Following a second day of verbal confrontation with Plaintiff, Schmiedeknecht suspended Plaintiff pending an investigation of her behavior. At least one other employee, Mike Bono, overheard Plaintiff's use of the word "fuck" to Schmiedeknecht.

While the investigation was ongoing, PMT offered to pay Plaintiff for the seventy-two hours of work that she missed and claimed a right to under FMLA leave, on the condition that Plaintiff provide an acceptable physician certification qualifying her for FMLA leave. Plaintiff rejected

**11.** As the Court previously noted, Plaintiff would have had a remedy available under 29 C.F.R. § 825.205 if PMT had engaged in the conduct that Plaintiff feared.

PMT's offer, because she continued to believe that providing a "yes" answer to question 5.b. would deprive her of her union rights.

After concluding the investigation, PMT terminated Plaintiff pursuant to PMT's work rules for a Group II violation. Group II violations provide penalties including immediate termination. Schmiedeknecht testified, however, that Plaintiff's behavior could have been deemed a Group I offense, which did not carry a potential penalty of immediate termination. The question of whether Plaintiff was properly cited for a Group II rather than a Group I offense is not one that this Court must address. It is not the Court's role to determine what rights Plaintiff had under her collective bargaining agreement. That is a job for an arbitrator. The Court need only determine whether PMT willfully retaliated against Plaintiff by terminating her because she attempted to assert her FMLA rights.

In the Court's judgment, PMT did not behave like an employer seeking to terminate Plaintiff for asserting her FMLA rights. PMT allowed Plaintiff multiple opportunities to correct what PMT viewed as Plaintiff's inadequate physician certification *so that Plaintiff would have been eligible for FMLA leave.* As the Court stated above, PMT did not willfully violate the FMLA when it decided not to accept Plaintiff's physician certification or when it ordered Plaintiff to undergo a fitness-for-duty exam. Thus, if the Court assumes that Schmiedeknecht and PMT believed that their handling of Plaintiff's FMLA claim was correct, and that they had given Plaintiff the benefit of the doubt when she did not submit a qualifying certification, it is also reasonable to believe that Schmiedeknecht and PMT viewed Plaintiff's hostile behavior as completely inappropriate and justifying termination for reasons other than Plaintiff's asserting of her FMLA rights.

The Court is thus faced with a situation in which it is possible that PMT discharged Plaintiff for asserting her rights under the FMLA. It is also possible, however, that PMT either correctly or incorrectly applied its work rules in response to an employee who vulgarly confronted her supervisor on consecutive days, or simply overreacted to a heated and unpleasant situation and deemed Plaintiff's behavior a Group II rather than a Group I offense without even considering Plaintiff's FMLA requests. Thus, in light of these conflicting possibilities, none of which is significantly more probable than the next, the Court concludes that Plaintiff did not prove by a preponderance of the evidence that PMT terminated Plaintiff for opposing a practice that is illegal under the FMLA. Since Plaintiff has not shown that PMT willfully discriminated against her for opposing any practice made unlawful by the FMLA, Plaintiff's discrimination claim under § 2615(a)(2) fails.

### Conclusion

Plaintiff's claims are barred by the statute of limitations. The Clerk shall enter judgment for Defendant, Professional Med Team.